DECISION
{¶ 1} Relator, Jerome J. Palumbo, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied relator's application for temporary total disability compensation, and to order the commission to issue a new order granting such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied because there was some evidence to support the commission's finding that the requested period of temporary total disability should be denied on the basis that the certifying physician was not relator's treating physician during the relevant time period. The magistrate also determined that the commission properly denied relator's request because relator's predominant disability condition was caused by a non-allowed condition. No objections have been filed to the magistrate's decision.
 {¶ 3} Based upon a review of the magistrate's decision and an independent review of the evidence, this court finds there is no error of law or other defect on the face of the magistrate's decision and adopts it as its own. Therefore, the requested writ of mandamus is denied.
Writ of mandamus denied.
Sadler and Wright, JJ., concur.
Wright, J., retired of the Supreme Court of Ohio, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Jerome J. Palumbo, : Relator, : v. : No. 04AP-107 The Industrial Commission of Ohio, : (REGULAR CALENDAR) James Conrad, Administrator Bureau of Workers' Compensation and : Motor Corporation, Respondents. :
 MAGISTRATE'S DECISION Rendered on June 28, 2004 Roeller, Roeller Jameson, and Robert K. Roeller, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
Roetzel Andress, L.P.A., Douglas E. Spiker, Eric S. Bravo,Eric G. Bruestle and Geraldine M. Johnson, for respondent Motor Corporation.
 IN MANDAMUS {¶ 4} Relator, Jerome J. Palumbo, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for temporary total disability ("TTD") compensation and requesting that the commission be ordered to grant the requested compensation.
Findings of Fact:
 {¶ 5} 1. Relator sustained a work-related injury on April 4, 2001, and his claim has been allowed for: "sprain of ankle, left."
 {¶ 6} 2. TTD compensation was awarded and paid from April 5 to May 2, 2001, and continuing based upon submission of medical proof.
 {¶ 7} 3. Because of relator's continued pain, his treating physician, Thomas A. Carothers, M.D., referred him to James Molnar, M.D., for consultation.
 {¶ 8} 4. Dr. Molnar saw relator on October 15, 2001 and, in his report of the same date, he noted the following:
His left ankle pain is very difficult to sort out particularly in light of his history of the diabetes and he does have evidence of neuropathy at least with a decrease in a stocking/glove distribution of pinprick and vibratory sense and he does have some dysesthesias present. Compounding this is his ankle injury with some still mechanical related pain, but this may be due to some nerve injury and what I think you are suspicious of, chronic regional pain syndrome or RSD.
 {¶ 9} 5. In the clinical impression section of his evaluation, Dr. Molnar noted as follows:
This individual has left foot and ankle pain that really is probably chronic regional pain syndrome by all patterns. However there are many complicating features including his peripheral vascular disease, his early diabetic neuropathy, as well as there may be some ongoing mechanical issues. This is further supported by his significant tenderness in the left medial meniscus area of the left knee and the restricted range of motion and some of the slight feeling of instability of the ankle.
 {¶ 10} 6. Dr. Molnar recommended that relator obtain an EMG and MRI of his ankle and foot, the utilization of diagnostic lumbar sympathetic block of the left side, and consideration for a bone scan.
 {¶ 11} 7. In his October 18, 2001 office note, Dr. Carothers diagnosed right ankle and foot sprain as well as reflex sympathetic dystrophy ("RSD"). Dr. Carothers noted that he planned to transfer care of relator to Dr. Molnar for treatment of RSD. In his March 27, 2002 office note, Dr. Carothers again diagnosed right ankle and foot sprain as well as RSD. In his April 18, 2002 report, Dr. Carothers stated: "This patient's overwhelming presentation is one of reflex sympathetic dystrophy which I think is an appropriate diagnostic allowance for this claim."
 {¶ 12} 8. Relator's motion that his claim be allowed for RSD or regional pain syndrome of the left ankle and left knee was denied by district hearing officer ("DHO") order of May 10, 2002, and affirmed by the August 28, 2002 order of the staff hearing officer ("SHO").
 {¶ 13} 9. On October 17, 2002, Dr. Molnar completed a C-84 certifying relator as disabled from July 12, 2001 through an estimated return-to-work date of February 1, 2003. Dr. Molnar listed ankle sprain as the diagnosis and noted a decreased range of motion and persistent pain.
 {¶ 14} 10. The record contains a January 20, 2003 office note from Dr. Molnar listing relator's ankle sprain/strain and RSD as the current diagnoses. Dr. Molnar also completed an additional C-84, dated March 3, 2003, indicating a last date of treatment as January 20, 2003 and certifying TTD compensation from July 12, 2001 to an estimated return-to-work date of May 1, 2003.
 {¶ 15} 11. Relator's application seeking TTD compensation from October 19, 2001 was denied by DHO order of March 3, 2003. The DHO denied the motion for the following reasons:
The District Hearing Officer denies the C-84 from Dr. Molnar filed 11/08/2002 for temporary total disability compensation from 10/19/2001 to 02/01/2003 and to continue. The District Hearing Officer finds that Dr. Molnar did not begin treatment until 04/01/2002 and cannot certify temporary total disability compensation before 04/01/2002. In addition, the District Hearing Officer denies temporary total disability compensation from 04/01/2002 to 02/01/2003 as the medical records indicate treatment is for disallowed R.S.D. Syndrome or some other non-allowed condition which may include nerve damage or diabetic neuropathy. Further, extensive testing have [sic] been done in 2001 and 2002 and there is no evidence of new tests or new treatment for the allowed soft tissue injury. The District Hearing Officer relies on the report of Dr. Koppenhoefer and other medical records.
This order is based on the report of Dr. Lutz dated 12/18/2002, Dr. Molnar dated 06/28/2002, Dr. Carothers dated 04/18/2002 
03/27/2002, and Dr. Koppenhoefer.
 {¶ 16} 12. The matter was appealed and heard by an SHO on May 29, 2003. The SHO affirmed the prior DHO order and stated further as follows:
The injured worker's counsel orally amended the C-84 filed 11/08/2002 to request payment of Temporary Total Compensation from 10/19/2001. The C-84 filed 11/08/2002 requesting payment of Temporary Total Compensation from 10/19/01 to 02/01/2003 and continuing is denied.
The period of Temporary Total Compensation from 10/19/2001 to 04/01/2002 is denied as Dr. Molnar was not the treating physician during this period. Dr. Molnar did not become the treating physician until 04/01/2002. As Dr. Molnar was not the treating physician for the above stated period, he is not able to certify Temporary Total Compensation.
Additionally, the Hearing Officer denies the requested period of disability from 10/19/2001 to 02/01/2003 and continuing, as it is based on the non-allowed condition of RSD. The Hearing Officer finds that the injured worker's inability to return to and perform the duties of his former position of employment is not the result of the allowed conditions in the claim, but rather is the result of RSD.
The Hearing Officer relies on the reports of Dr. Carothers (10/18/2001, 04/18/2002) and Dr. Molnar (10/15/2001, 06/28/2002, 01/20/2003).
 {¶ 17} 13. Further appeal was refused by the commission.
 {¶ 18} 14. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 20} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment.State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630. Regardless of the type of compensation sought by a claimant, the claimant is obligated to show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. As such, it is undisputed that compensation awarded to a claimant can be paid only for the allowed conditions, and that nonallowed conditions cannot be used to advance or defeat a claim for compensation. State ex rel.Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452; State ex rel.Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118;State ex rel. Ignatious v. Indus. Comm. 99 Ohio St.3d 285,2003-Ohio-3627; and State ex rel. Bradley v. Indus. Comm.
(1997), 77 Ohio St.3d 239.
 {¶ 21} In the present case, relator contends that the commission abused its discretion by rejecting the C-84 of Dr. Molnar because Dr. Molnar was not relator's treating physician. Relator contends that Ohio Adm. Code 4123-5-18 requires that all hearing officers must consider the medical proof and reports of any "physician duly licensed to render the treatment" without requiring that the physician be the "physician of record." However, the magistrate finds that relator has misconstrued the commission's rationale for denying his motion for TTD compensation.
 {¶ 22} In the present case, the commission denied the requested period of TTD compensation from October 19, 2001 to February 1, 2002 on the basis that Dr. Molnar was not the treating physician during this time period. The record indicates that Dr. Molnar saw relator for a consultation on October 15, 2001. As such, Dr. Molnar could not certify a period of disability prior to October 15, 2001, the date he first treated relator. Furthermore, there is no evidence that Dr. Molnar either saw relator or treated relator again before April 1, 2002. In denying the requested compensation for that time period, the commission did not abuse its discretion as the Supreme Court of Ohio has held that a lengthy period of time during which a physician does not see or treat a patient cannot be considered as "some evidence" supporting an award of TTD compensation. See, for example, State ex rel. Kroger Co. v. Morehouse (1995),74 Ohio St.3d 129. In that case, the court noted that the commission could consider the lengthy period during which the doctor had no contact with the patient. While a lengthy period does not invalidate the certification in its entirety, it can cast considerable doubt on the reliability of the certification of temporary total disability over that period. As such, the commission had discretion to conclude that, since Dr. Molnar only saw relator once between October 1, 2001 and April 2002, his opinion that he was temporary totally disabled during this time period was not reliable. Counsel for respondents assert that a C-84 is required to be signed by the "physician of record" and that the commission actually denied Dr. Molnar's C-84 on this basis and not for the stated reason that Dr. Molnar was not the "treating physician." However, inasmuch as a patient/claimant could have multiple "treating physicians" and yet only one "physician of record," this magistrate finds that the terms are not synonymous and interchangeable. As such, the magistrate rejects respondents' rationale.
 {¶ 23} Furthermore, the commission had an additional reason to deny the request for TTD compensation. Specifically, the commission determined that, based upon a review of the evidence, relator's inability to return to and perform the duties of his former position of employment were not the result of the allowed conditions, but, rather, a result of RSD. The commission relied upon reports by Drs. Carothers and Molnar wherein they opined that RSD was the predominant disability condition. Again, the magistrate finds that the commission did not abuse its discretion in this regard.
 {¶ 24} The office notes of Drs. Carothers and Molnar and the report of Dr. Molnar all indicate that relator is suffering from RSD, which the commission has refused to allow in this claim. Although the C-84 only listed the ankle sprain as the cause, it was not an abuse of discretion for the commission to look at the C-84 and to view it in combination with the office notes and reports by the doctors which were in the record. Again, those reports make it clear that both Drs. Carothers and Molnar believe that relator has RSD and that it is his most significant and disabling condition.
 {¶ 25} Based upon the following, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for TTD compensation. The commission provided a reasonable explanation for why it did not consider Dr. Molnar's C-84 to be credible and further denied the requested compensation based upon the determination that the disability was caused by a nonallowed condition. As such, this court should deny relator's request for a writ of mandamus.
 /s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE